Miriam Ayala
519 Maple Street
San Bruno, California 94066
Telephone: 650-438-3005

**FILED**

NOV 19 2021

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

Pro Se

## IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIRIAM AYALA, | Case No.  21-06703 JCS |
| Plaintiff, | |
| v. | FIRST AMENDED COMPLAINT |
| TRANS UNION, LLC, EXPERIAN INFORMATION SOULUTIONS, INC, | |
| Defendant. | DEMAND FOR JURY TRIAL |

## I.  **INTRODUCTION**

1.      Plaintiff brings this action against Defendants TRANS UNION, LLC and EXPERIAN INFORMATION SOULUTIONS, INC, based upon the claim that Defendant has failed to comply with the statutory requirements of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.,* ("FCRA" or the "Act"), by failing to correct errors on Plaintiff's credit report that were disputed by Plaintiff; by failing to investigate disputed items reported to them and by failing to report to the consumer that derogatory marks were made to the credit reporting agencies regarding his credit.  This conduct is clearly proscribed by the Act and is subject to statutory penalties for each violation.

2.      The digitalization of our society has resulted in an exponential increase in the

COMPLAINT: AYALA v. TRANS UNION.

accumulation and processing of data concerning individual American citizens.  Data technology, whether used by businesses, banks, the Internal Revenue Service or other institutions, allows individual consumer information to flow directly and instantaneously to requesting parties. While timely distribution of information has obvious advantages, and may provide faster and better decision-making by its recipients, like banks, nonetheless all members of society should benefit from this convenience and efficiency as well as be protected from potential inaccuracies, glitches or intentional abuses of such lightening fast digital flow of information.

3.      The FCRAs wise institution of statutory penalties was prescient insofar as information flow has readily become subject to mishandling, misuse and mal-use.  Individual consumers have concomitantly been subjected to substantial damage, both emotional and economic, whenever inaccurate, false or fraudulently misdirected information is disseminated and/or obtained about them.    In fact, Equifax Information Services, LLC, expressly acknowledges the potential for misuse and resulting damage every time it solicits its credit monitoring service to a consumer.

4.      Credit Reporting Agencies sell to ready paying subscribers (*i.e.*, banks, retailers, landlords, lenders, potential employers and similar interested parties) information, commonly called "consumer reports" concerning individuals who may be applying for retail credit, such as for a car loan, credit cards, mortgage loans and the like.

5.      Since 1970, when Congress enacted the Fair Credit Reporting Act, federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private and financial information that they compile and sell about individual consumers.

6.      One of the primary purposes in requiring CRAs to assure maximum possible accuracy of consumer information is to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system. (*See* 15 U.S.C. § 1681(a)(1).7).

7.      Thus, one of the main purposes of the FCRA is to require consumer reporting

- 2 -

agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information… 15 USC 1681(b).

8.    Moreover, the preservation of one's good name is at the heart of the FCRA's purposes: "[W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal 'blips' and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage to buy a home. *We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason.... As Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed. Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570 (1970)]" /emphasis added/.

9.    To further the primary goal of greater accuracy, the FCRA has also required CRAs and "furnishers" of credit information, to conduct "reasonable investigations" into bona fide disputes sent to CRAs by consumers claiming to have inaccurate or incomplete information appearing in their credit files, to correct or update any such errors or omissions, and to report back to the consumer the results of the investigation.

10.    This action seeks compensatory, statutory and punitive damages, costs and reasonable attorneys' fees for Plaintiff, MIRIAM AYALA against Defendants, for their intentional, willful and/or negligent violations of the Fair Credit Reporting Act, as described herein.

## II.  JURISDICTION AND VENUE

11.    This Court has federal question jurisdiction because this case arises out of violation of federal law pursuant to 28 U.S.C. § 1331 and in regard to 15 U.S.C. § 1681, et sec.

12.     Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides within the judicial district of this court; (ii) the conduct complained of herein occurred within this judicial district.

### III.   PARTIES

13.     Plaintiff MIRIAM AYALA, ("Ayala") is an individual residing in San Mateo County, State of California.  Plaintiff is a businesswoman and prior to the acts of Plaintiffs, a holder of a good financial reputation and credit rating and a "Consumer" as defined by 15 USC 1681a.

14.     Defendant TRANS UNION, LLC. ("Trans Union") is a foreign corporation organized in the State of Delaware, with its main office located at 555 West Adams, Chicago, Illinois. TRANS UNION, LLC, is authorized to do business and is doing business in the State of California, County of San Mateo, State of California.  TRANS UNION, LLC, is a "consumer reporting agency" as that term is defined under the Act (15 USC 1681a(f)). Defendant TRANS UNION, LLC, is a direct participant in the wrongful and malicious acts in the transaction which is the subject of this complaint herein in violation of the Act.

15.     Defendant EXPERIAN INFORMATION SERVICES, INC. ("Experian") is a foreign corporation organized in the State of Ohio, with its main office located at 475 Anton Blvd. Costa Mesa, California 92626 USA.   EXPERIAN INFORMATION SERVICES, INC., is authorized to do business and is doing business in the State of California, County of San Mateo, State of California. EXPERIAN INFORMATION SERVICES, INC., is a "consumer reporting agency" as that term is defined under the Act (15 USC 1681a(f)).  Defendant EXPERIAN INFORMATION SERVICES, INC., is a direct participant in the wrongful and malicious acts in the transaction which is the subject of this complaint herein in violation of the Act

### IV.   FACTUAL ALLEGATIONS

16.     On or about 2004, Plaintiff purchased her home in San Bruno, located at 519 Maple Street, San Bruno, California 94066.

17.     At that time Plaintiff was gainfully employed as a licensed real estate agent and

- 4 -

doing well economically and paid her mortgage without missing a payment through year 2008.

18.   Late in 2008 Plaintiff's son was diagnosed with schizophrenia which caused a great deal of disturbance in Plaintiff's daily life and schedule.   This event simultaneously resulted in her suffering severe depression, insomnia and an eating disorder for which she has, since that time, been in the care of a treating psychiatrist and psychologist.  As a diret result, Plaintiff takes a daily regimen of six (6) separate medications.

19.   In that same year, 2008,  Plaintiff suffered a loss of employment as a real estate agent.

20.   Plaintiff became borderline insolvent due to the loss of employment.

21.   These circumstances caused Plaintiff to fail to make monthly debt service payments on her home mortgage for the San Bruno residence and therefore sought a loan modification on or about March, 2015.

22.   In this process, it became necessary for Plaintiff to seek protection in bankruptcy Court in order to avoid a pending foreclosure of her home by the bank.  Plaintiff filed for bankruptcy protection on May 21, 2015.

23.   She thereafter voluntarily dismissed her bankruptcy case, some 18 days later on June 8, 2015.  Plaintiff did not file a bankruptcy plan, nor was any plan confirmed by the Bankruptcy court.

24.   Plaintiff thereafter managed to continue making monthly mortgage payments through October 2019 when she was again laid off from her current day job.

25.   On or about October 2018, Plaintiff again sought to obtain a loan modification by use of a law firm which assured her that she would be able to get a loan modification which she desperately needed at that time.

26.    Plaintiff was again denied a loan modification.

27.   Plaintiff was again facing a foreclosure in 2018 which again directly resulted in her decision to file for bankruptcy protection.

28.   Plaintiff filed for bankruptcy protection on November 12, 2019 in order to avoid foreclosure.  She voluntarily dismissed this bankruptcy case, only 15 days later on November 27,

- 5 -

2019.  Plaintiff did not file a bankruptcy plan, nor was any plan confirmed by the Bankruptcy court.  The action was terminated on February 11, 2020.

**29.**    On or about December 2019, and again in February, March and October of 2020, Plaintiff submitted a dispute with each Credit Reporting Agency, Exquifax and Trans Union requesting that they delete all references to her withdrawn bankruptcy filings, because each had reported that Plaintiff had bankruptcy dismissals on her credit record.

**30.**    Each of the Credit Reporting Agencies, Exquifax and Trans Union, were informed that these bankruptcy filings were reported inaccurately as being dismissed rather than withdrawn.

**31.**    As of the date of filing this complaint, each of the Defendants current Credit Report on Plaintiff, continue to report, inaccurately, that Plaintiff's bankruptcies are dismissed rather than withdrawn.

**32.**    As a direct and proximate result of Defendant's failure to remove the references to the bankruptcies on her credit report, Plaintiff has suffered damage to her reputation including but not limited to the following events:

**33.**    On or about December 2019, Plaintiff applied for a Discover credit card and was denied.

**34.**    Plaintiff also applied for an automobile loan with Autobahn Mercedes in Belmont, California, which was specifically denied due to bankruptcies appearing on her credit report.

**CRA Misconduct**

**35.**    On or about July 31, 2021, Plaintiff again sent a final letter to Defendants informing them about and disputing the inaccuracies regarding her bankruptcy filings, said letter is attached hereto as Exhibit A, ("dispute letter").  Said Dispute Letter specifically brings to Defendants attention that her bankruptcies were withdrawn.

**36.**    Defendants received the Dispute Letter.

**37.**    After receiving the Dispute Letter, Defendants failed to conduct a reinvestigation regarding Plaintiff's dispute regarding the accuracy of Plaintiffs credit report.

**38.**    Defendants did not remove or modify its reporting of Plaintiff's bankruptcy after

- 6 -

COMPLAINT: AYALA v. TRANS UNION.

receiving Plaintiff's Dispute Letter.

39.     The FCRA provides that if the consumer reporting agency furnishes a consumer report that contains information regarding any bankruptcy case which has been "withdrawn by the consumer before a final judgment, the consumer reporting agency shall include in the report that such case or filing was withdrawn upon receipt of documentation certifying such withdrawl." 15 USC 1681c(d)(1).

40.     The FCRA further requires that when preparing consumer reports a consumer reporting agency must follow "reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates" 15 USC 1681e(b).

41.     Plaintiff is informed and believes that Defendant violated 15 U.S.C. 1681c and e, by failing to discover and remove the inaccurate and derogatory bankruptcies on Plaintiff's credit report.  Specifically, Defendants should have carefully and accurately reported on Plaintiff's credit report that her bankruptcies were "withdrawn" prior to a final judgment or submission of a bankruptcy plan and or conformation of such plan.

42.     Defendant's failure to correct the above stated inaccuracies on Plaintiff's credit report was intentional and in reckless disregard of its duty to refrain from reporting inaccurate information.  Consequently, Defendant willfully and negligently failed to comply with its duty to investigate Plaintiff's dispute under 15 U.S.C. 1681(n) and (o).

43.     On information and belief, Defendant made either no investigation or negligently investigated the disputed items after receiving notice of items in dispute by the CRAs about Plaintiff.

44.     Plaintiff has spent many hours and expended funds in an effort to get the derogatory reports off of her credit report due to the lack of investigation or negligent investigation by Defendant.

45.     As a direct and proximate result of Defendant's willful and untrue communications, Plaintiff has suffered great economic pain and suffering, including but not limited to reviewing credit reports from all three CRAs, hiring agents to assist her in communicating with the CRAs, making numerous attempts at obtaining a replacement auto loan

- 7 -

for a vehicle, suffering an inability to obtain refinancing on her home loan, suffering an inability to obtain an auto loan, continued impairment of her credit score and such other and further expenses in an amount to be proved at trial.

46.     The procedures developed and systematically employed by Defendants, and each of them, to report Chapter 13 bankruptcies that consumers filed but subsequently withdrew before having a plan approved by the bankruptcy court result in credit reporting that is inaccurate, incomplete, and misleading, and which violates the requirements of the FCRA.

47.     Said derogatory reports remain on Plaintiff's credit report as of the time of this filing.

48.     Wherefore, Plaintiff prays for judgment as set forth below.

### FIRST CAUSE OF ACTION
### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### AGAINST DEFENDANTS AND EACH OF THEM
(15 U.S.C. § 1681$e$, et sec.)

49.     Plaintiff hereby incorporates by reference each and every paragraph stated above.

50.     Defendants are a "furnisher" as that term is used in Section 1681$s$-2b of the FCRA and is required to provide notice to a consumer as follows:

> ....

> **(b) Duties of furnishers of information upon notice of dispute**

> (1) In general, **After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute** with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—

> > (A)   conduct an investigation with respect to the disputed information;

> > (B)   review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

> > (C)   report the results of the investigation to the consumer reporting agency;

> > (D)   if the investigation finds that the information is incomplete or inaccurate, report those results to all

other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E)   if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—

(i) modify that item of information;
(ii) delete that item of information; or
(iii) permanently block the reporting of that item of information.

(2)   Deadline
A person shall complete all investigations, reviews, and reports required under paragraph (1) regarding information provided by the person to a consumer reporting agency, before the expiration of the period under section 1681i(a)(1) of this title within which the consumer reporting agency is required to complete actions required by that section regarding that information.
/Emphasis Added./

**51.**   Section 1681n of the FCRA imposes civil liability on any CRA or furnisher "who willfully fails to comply with any requirement" of the Act. (*See* 15 U.S.C. § 1681n(a)).

**52.**   Section 1681o of the FCRA provides for civil liability against any CRA or furnisher which is negligent in failing to comply with any requirement imposed under the Act.

## Defendant's Failure To Provide Accurate Reports

**53.**   Defendants prepared, compiled, issued, assembled and communicated consumer reports about Plaintiff that contain inaccurate, erroneous, unfair, inequitable and or incomplete and misleading credit information related to Plaintiff's bankruptcy filings.

**54.**   The Defendants inaccurate reporting of Plaintiff's bankruptcies was caused by Defendant's failure to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff's bankruptcies.

**55.**   Plaintiff has been and continues to be damaged as a direct and proximate result of Defendant's violations of 1682e(b) of the FCRA.

**56.**   The credit worthiness of a consumer whose Chapter 13 bankruptcy was dismissed

- 9 -

1    or withdrawn before a plan confirmation is superior to that of a consumer whose Chapter 13

2    bankruptcy was dismissed after a plan confirmation.

3        **57.**    At a minimum a consumer who dismissed or withdrew a bankruptcy filing before

4    plan confirmation is in a more credit worthy position than a consumer whose Chapter 13

5    bankruptcy was dismissed after plan confirmation and who has failed to meet at least one

6    additional debt payment obligation, i.e. that consumer's obligation to make payments under the

7    Chapter 13 plan.

8        **58.**    By failing to provide an accurate reporting regarding Plaintiff's disputed

9    bankruptcies, Defendants, and each of them, willfully and/or negligently violated 15 U.S.C. §

10   1681 with respect to each request lodged by Plaintiff.

11       **59.**    Defendant's violations of Section 1681e(b) of the FCRA are the proximate cause

12   of Plaintiff's damages.

13       **60.**    Defendant's conduct, actions and or inaction were willful, rendering each liable

14   for statutory and punitive damages in an amount to be determined by the Court pursuant to 15

15   USC 1681n.

16       **61.**    Plaintiff specifically advised Defendant on multiple occasions that the derogatory

17   information furnished to the CRAs was not accurate and requested the credit information be

18   corrected accordingly, *i.e.*, any references to missed payments on his auto loan be deleted.

19       **62.**    As a direct and proximate result of Defendant's willful and/or negligent refusal to

20   conduct reasonable investigations as mandated by the FCRA and as outlined above, Plaintiff has

21   suffered loss and damage including, but not limited to: economic loss due to denial of credit

22   financing, loss of opportunity to obtain credit, damage to reputation, expenditure of considerable

23   time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling

24   him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees and

25   punitive damages, together with the costs of this action pursuant to 15 U.S.C. § 1681o.

26       **63.**    Upon information and belief, Defendants, and each of them, have exhibited a

27   pattern and practice of refusing to correct consumer credit files after being noticed about false

28   derogatory information contained in such files, and in failing to provide such corrections to

- 10 -

consumers about making derogatory reports, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

**64.** Defendant Defendant's pattern of refusal to correct derogatory information as mandated by the FCRA reveals a *conscious and reckless disregard* of the rights of Plaintiff. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and/or willful and wanton misconduct, calling for imposition of statutory damages, an assessment of punitive damages and attorneys' fees and costs against Defendant, pursuant to 15 U.S.C. § 1681$n$(a)(2).

**SECOND CAUSE OF ACTION**
**VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**
**AGAINST DEFENDANTS AND EACH OF THEM**
(15 U.S.C. § 1681$i$, et sec.)

**Defendants Failure to Provide a Reasonable Investigation**

**65.** Defendants prepared, compiled, issued, assembled and communicated consumer reports about Plaintiff that contain inaccurate, erroneous, unfair, inequitable and or incomplete and misleading credit information related to Plaintiff's bankruptcy filings.

**66.** Plaintiff disputed the completeness and accuracy of Trans Union's reporting of Plaintiff's bankruptcies by notifying the agency directly of their disputes.

**67.** Defendants, and each of them, failed to conduct a reasonable reinvestigation of Plaintiff's disputes to determine whether the disputed information was inaccurate in violation of 1681i(a)(1)(A).

**68.** Plaintiff has been and continues to be damaged as a direct result of Defendant's violations of 1681i of the FCRA.

**69.** Defendants, and each of them, are the proximate cause of Plaintiff's damages.

**70.** Defendants' inaccurate reporting of Plaintiff's bankruptcies was caused by Defendants', and each of them, failure to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff's bankruptcies.

**71.** Plaintiff continues to be damages as a result of Defendants violations of Section of 1681i of the FCRA.

COMPLAINT: AYALA v. TRANS UNION.

72.     By failing to provide a reasonable investigation regarding Plaintiff's disputes in this regard, Defendants, and each of them, willfully and/or negligently violated 15 U.S.C. § 1681 with respect to each request lodged by Plaintiff.

73.     Either Defendant conducted *no* investigation of Plaintiff's disputes, or such "investigations" were so shoddy as to allow objectively false and highly damaging information to remain on Plaintiff's credit file.

74.     By failing to provide a reasonable investigation regarding Plaintiff's disputed bankruptcies, Defendants, and each of them, willfully and/or negligently violated 15 U.S.C. § 1681 with respect to each request lodged by Plaintiff.

## THIRD CAUSE OF ACTION
### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### AGAINST DEFENDANTS AND EACH OF THEM
(15 U.S.C. § 1681*c,* et sec.)

75.     Defendants prepared, compiled, issued, assembled and communicated consumer reports about Plaintiff that contain inaccurate, erroneous, unfair, inequitable and or incomplete and misleading credit information related to Plaintiff's bankruptcy filings.

76.     Defendants, and each of them, failures have been and continue to be in violation of 1681c(d)(1).

77.     Plaintiff has been and continues to be damaged as a direct result of Defendant's violations of 1681c of the FCRA.

78.     Defendants, and each of them, are the proximate cause of Plaintiff's damages.

79.     Defendants, and each of them, conduct, actions, and inaction were willful, rendering each of them liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 USC 1681n.

**WHEREFORE**, Plaintiff prays for judgment against Defendants, and each of them, for the following relief, together with reasonable attorney's fees and costs and all other just relief the Court deems proper according to proof at trial:

1.   General damages in an amount of $50,000;

- 12 -

COMPLAINT: AYALA v. TRANS UNION.

2.   Special damages in the amount to be proved at trial;

3.   Punitive damages as provided for by 15 U.S.C. § 1681$n$(2);

4.   Statutory damages as provided for by 15 U.S.C. § 1681$n$(2);

5.   Attorney's Fees, Expert Witness Fees and Costs of suit herein; as provided for by 15 U.S.C. § 1681$n$(3) and 15 U.S.C. § 1681$o$(2); and;

6.   For such other and further relief as this Court deems just and proper.

**TRIAL BY JURY IS DEMANDED**

Dated this 25th day of October, 2021.


Respectfully submitted,


_MIRIAM AYALA_

**VERIFICATION AND DEMAND FOR JURY TRIAL**


I, the undersigned, am the plaintiff in this matter and make this verification and demand for jury trial; I have read the foregoing complaint, know the contents thereof, and from information and belief, believe the same to be true.  I verify under penalty of perjury that the foregoing is true and correct.  Furthermore, I demand a jury trial in this action.

DATED: October 25, 2021

_MIRIAM AYALA_

- 13 -

COMPLAINT: AYALA v. TRANS UNION.